BROWN *v.* CARLTON.

Opinion delivered March 3, 1930.

*Golden & Golden,* for appellant.

*J. R. Parker,* for appellee.

HUMPHREYS, J. The purpose of this suit, disclosed by the original complaint filed by the Exchange Bank & Trust Company, and the amended complaint filed by Carroll J. Brown, duly appointed receiver by the United States District Court to take charge of the estate of Herman Carlton, a bankrupt, against Herman Carlton, Gertrude T. Carlton and Irene Carlton, was to set aside as fraudulent a deed of date October 20, 1924, from Herman Carlton to Gertrude T. Carlton conveying certain lands in the old town of Lake Village, in the Julia R. Streett's Addition to Lake Village, in Lakeside Addition to the town of Lake Village; and a deed of date December 16, 1926, from Herman Carlton to his sister, Irene Carlton, conveying an undivided one-half interest of lot 5 of Yergers-McMehon subdivision of the NW¼ of section 22, township 15 south, range 1 west in Chicot County, Arkansas, and to subject Herman Carlton's equity in said real estate to the payment of his debts.

The suit was brought on December 16, 1927, and, after separate answers had been filed by the defendants denying the material allegations in the complaint, and after Herman Carlton had testified in the case, he died on March 11, 1929, and the cause was revived against his administratrix, Gertrude T. Carlton.

The cause proceeded to a hearing in the chancery court of Chicot County upon the pleadings and testimony, which resulted in a finding by the trial court that, at the time the conveyances in question were made, Herman Carlton was solvent, and that they were not made in contemplation of insolvency, nor for the purpose of defrauding existing or future creditors, and a decree dismissing the original as well as the amended complaint for the want of equity, from which is this appeal.

Appellant contends for a reversal of the decree upon the alleged ground that the finding of the trial court was contrary to a preponderance of the testimony. After a

very careful reading and consideration of the evidence in the case, we have concluded that the finding of the chancery court was in accordance with the weight thereof. It is true the conveyance by Herman Carlton to his wife was voluntary or without consideration, but at the time it was made and for more than three years thereafter he was solvent. There is nothing in the evidence which reflects that the conveyance was made in contemplation of insolvency. A very reasonable explanation is made as to why he gave his wife the property in question. The lots conveyed, as well as other lots owned by his wife, Gertrude T. Carlton, were incumbered for a balance of about $14,000 to the Georgia State Savings Association, which had been borrowed to construct a hotel and some stores thereon. Additional money was needed to make repairs as well as other improvements, and the Georgia State Savings Association wanted the title to all of the property in the name of one of them before it increased the loan and took a new mortgage. In order to comply with the request of the Georgia State Savings Association, Herman Carlton gave his wife the property in question, only owing at the time a few current debts amounting to three or four hundred dollars, which had been incurred for their living expenses. It is true that in the same year that the conveyance was made Herman Carlton borrowed $3,600 from three different banks with which to buy bank stock in the Chicot Bank & Trust Company. He joined a pool entered into by himself and five or six of the best men of the village to buy $75,000 of the stock ...d by Walter Davies in said bank; the capital stock of the bank was $150,000. The pool was represented in the purchase of the stock by Gordon N. Peay of Little Rock, Arkansas, who investigated the bank and found the book value of the stock to be $96 a share. Others who investigated the bank said that the stock was worth $12 a share. Although Walter Davies was disgruntled and desired to sell the stock and was willing to take twenty-eight cents on the dollar for it, the purchasers who

had formed the pool and paid twenty-eight cents per share therefor believed that they were buying same at a great bargain, and believed it so firmly that all of them borrowed the money with which to buy same. Herman Carlton bought $14,000 of the stock, and pledged $2 for $1 to three different banks from which he borrowed the money to pay his part into the pool. The banks from which he borrowed the money willingly made the loan and took the stock as collateral security therefor. We see nothing in the transaction to indicate insolvency or contemplated insolvency at the time he conveyed the lots in question to his wife nor when he purchased the stock.

The transfer to his sister of the lot heretofore described was made for a valuable consideration. There was a vendor's lien for something near its value at the time he conveyed it. He sold his sister his equity therein for $500 of the stock in the Chicot Bank & Trust Company. All he owned at the time were a few current debts, $4,000 to the banks which he had borrowed to pay for the stock he had bought and about $1,000 in collections he had made for insurance companies he represented. The amount he owed the insurance companies was afterwards paid by his sister who was appointed agent of the insurance companies in his place. At the time he made this transfer to his sister he still owned $14,000 of the stock in the Chicot Bank & Trust Company, a part of which had been assigned as collateral security for loans with which to buy the stock. In the spring of 1927, after the conveyance to his sister, the Chicot Bank & Trust Company failed, and, when the Bank. Commissioner assessed $14,000 against him on his stock, it rendered him financially helpless and insolvent. He turned all of his stock in the Chicot Bank & Trust Company over to the trustee in bankruptcy, the appellant herein. His equity in the property he conveyed to his sister was inconsequential and was for a valuable consideration, and, according to the weight of the evidence, was not made to defeat his creditors in the collection of their debts. A

fair interpretation of the evidence reflects that he thought the three banks were amply secured by the collateral he had deposited with them.

No error appearing, the decree is affirmed.